# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ESTATE OF NOAH JOE STORM, by its Administrator, TONI SCADDEN; TONI SCADDEN, Individually; and BILL STORM, Individually;<br><br>   Plaintiffs,<br><br>vs.<br><br>NORTHWEST IOWA HOSPITAL CORPORATION *dba* ST. LUKE'S REGIONAL MEDICAL CENTER; DR. JOHN DOE 1, Supervising Physician; SIOUXLAND MEDICAL EDUCATION FOUNDATION, INC.; DR. JOHN DOE 2, Senior Resident for Siouxland Medical Education Foundation; DR. JOHN DOE 3, Attending Physician for Siouxland Medical Education Foundation; THADDEUS VERNON; JEFFREY ZOELLE; and THE CRITTENTON CENTER;<br><br>   Defendants. | No. C06-4070-DEO<br><br>**REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, AND TO CERTIFY QUESTION OF LAW TO IOWA SUPREME COURT** |

_____

On August 25, the plaintiffs Toni Scadden and Bill Storm, individually, and Toni Scadden as the Administrator of the Estate of Noah Joe Storm, filed a Complaint in this court for the wrongful death of Noah Joe Storm, the unborn child of Toni Scadden and Bill Storm. The plaintiffs assert claims against the defendants Northwest Iowa Hospital Corporation, doing business as St. Luke's Regional Medical Center (the "Hospital"); Dr. John Doe 1, "the Supervising Physician on duty September 4-5, 2004, on behalf of [the Hospital]"; Siouxland Medical Education Foundation, Inc. ("SMEF"); John Doe 2, "the Senior Resident on duty on September 4-5, 2004, on behalf of SMEF"; John Doe 3,

"the Attending Physician on Call on September 4-5, 2004, on behalf of SMEF"; Thaddeus Vernon, a first-year resident physician affiliated with SMEF who was performing services at the Hospital on September 4-5, 2004; Jeffrey Zoelle, an attending physician at the Hospital on September 4, 2004; and The Crittenton Center ("Crittenton"), "in partnership or a joint venture with SMEF." (Doc. No. 1, ¶¶ 7-14)

According to the allegations in the Complaint, at about 9:00 p.m. on Saturday, September 4, 2004, Ms. Scadden tripped and fell at her home while doing laundry and suffered blunt abdominal trauma. She was more than thirty-eight weeks pregnant at the time. She immediately went to the hospital, arriving at about 9:30 p.m. She was admitted, examined, and treated. She was released from the hospital at 12:20 p.m. on Sunday, September 5, 2004. She returned to the hospital on Monday, September 6, 2004, because of continuing health problems, and learned that the fetus had died. She then gave birth to a stillborn baby, who was given the name Noah Joe Storm. In Count 1 of the complaint, Ms. Scadden, as Administrator of the Estate of Noah Joe Storm, sues for wrongful death under Iowa Code section 611.20.[1]

On November 14, 2006, Crittenton filed a motion to dismiss (Doc. No. 12), arguing Count 1 of the Complaint should be stricken because there is no cause of action under Iowa law for the wrongful death of an unborn fetus. The Hospital and Dr. Zoelle joined in the motion. (Doc. No. 13) On November 15, 2006, SMEF and Dr. Vernon filed a motion (Doc. No. 14) for judgment on the pleadings with respect to Count 1, advancing the same arguments asserted by Crittenton in support of its motion to dismiss. On November 20, 2006, the plaintiffs filed a resistance to the motion to dismiss (Doc. No. 15), and a motion to certify question of law to the Iowa Supreme Court (Doc. No. 16).[2] On November 30,

---

[1] "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." IOWA CODE § 611.20.

[2] The plaintiffs have not filed a separate resistance to the motion for judgment on the pleadings (Doc. No. 14), but the court considers this to be an oversight. Although not expressly designated as such,

2

2006, Crittenton filed its resistance to the motion to certify question. (Doc. No. 19) On December 1, 2006, SMEF and Dr. Vernon resisted the motion. (Doc. No. 21) The Hospital and Dr. Zoelle have joined in the other defendants' resistances to the motion to certify. (Doc. No. 22) Although a hearing has been requested on all of the motions, the court finds a hearing would not be helpful in resolving the issues raised by the parties in their motions.

The plaintiffs do not advance any real arguments in opposition to the defendants' dispositive motions based on current Iowa law. Indeed, Iowa law seems to be well settled on the issue of whether a wrongful death action can lie for an unborn fetus. *See Dunn v. Rose Way, Inc.*, 333 N.W.2d 830 (Iowa 1983); *Weitl v. Moes*, 311 N.W.2d 259, 272-73 (Iowa 1981), *overruled on other grounds by Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983). The court is bound by Iowa law in this diversity action. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Nevertheless, the plaintiffs argue the Iowa Supreme Court should be given a chance to revisit its rulings on the issue. Therefore, they ask the court to certify the following question to the Iowa Supreme Court: **"Does an unborn fetus have a cause of action for wrongful death under Iowa Code section 611.20?"**

The undersigned addressed the question of when it is appropriate to certify a question to the state court in *Bituminous Casualty Corp. v. Sand Livestock Systems, Inc.*, 2005 WL 1476441 (N.D. Iowa, June 22, 2005), as follows:

> "Whether a federal district court should certify a question of state law to the state's highest court is a matter 'committed to the discretion of the district court.'" *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 309 (N.D. Iowa 1997) (quoting *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881-82 (8th Cir. 1996) (citing *Lehman Bros. v. Schein*, 416

---

the court will consider the plaintiffs' resistance (Doc. No. 15) to the motion to dismiss also to be a resistance to the motion for judgment on the pleadings.

U.S. 386, 391, 94 S. Ct. 1741, 1744, 40 L. Ed. 2d 215 (1974)); and citing *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir. 1992) (also citing *Lehman Bros.*)).

This court's Local Rules provide:
> When a question of state law may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decisions of the appellate courts of the state, any party may file a motion to certify the question to the highest appellate court of the state. The court may, on such motion or on its own motion, certify the question to the appropriate state court.

LR 83.1 (as amended Jan. 1, 2003). The Iowa Supreme Court is authorized by statute to answer questions certified by this court where the questions "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of [Iowa]." Iowa Code § 684A.1 (1996).

In *Leiberkneckt*, the Honorable Mark W. Bennett discussed in some detail the following factors to be considered in determining whether to certify a question to a state's highest court:
> (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.*, 930 F. Supp. 1295, 1309 n.10 (N.D. Iowa 1996) (citing *Rowson v.*

> > *Kawasaki Heavy Indus., Ltd.*, 866 F. Supp. 1221, 1225 & n.5 (N.D. Iowa 1994)).
>
> *Leiberkneckt*, 980 F. Supp. at 310. The court added a seventh factor, to-wit: "whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances." *Id.*, 980 F. Supp. at 311.

*Bituminous Casualty* at *13-*14.

In the present case, three of the factors are neutral. Both this court and the Iowa Supreme Court have adequate legal resources to address the issue, both courts are familiar with the pertinent state law, and the time demands on both courts would be about the same. Two factors weight in favor of certification. Because of recent developments in other areas of the law, the issue is likely to recur frequently. Also, the present lawsuit was only recently filed.

The remaining two factors are related, but weigh in opposing directions. Under current Iowa law, the issue under consideration is settled. An unborn fetus does not have a cause of action for wrongful death under Iowa Code section 611.20. This weighs heavily against certification. On the other hand, a marked split of authority exists among those jurisdictions that have considered the issue when presented with similar or analogous circumstances. This weighs in favor of certification.

In *McKillip v. Zimmerman*, 191 N.W.2d 706 (Iowa 1971), a one-month pregnant woman miscarried after she was injured in an automobile accident. The Iowa Supreme Court noted that "[a] sharp division exists among the several states as to recovery for wrongful death of a stillborn viable fetus." *Id.*, 191 N.W.2d at 708. Although the fetus in *McKillip* was not viable, the court declined to decide the case on a viability theory. Instead, the court decided the issue as a matter of statutory construction. The court noted that without Iowa Code section 611.20, the administrator of an estate would have no cause of action for wrongful death. *Id*. The question, then, was whether a stillborn fetus is a

5

"person" on whose behalf a wrongful death action may be brought under section 622.20. *Id*. The court ruled as follows: "We hold 'person' as used in Code section 611.20 means only those born alive." *Id.*, 191 N.W.2d at 709.[3]

In *Weitl v. Moes*, the court applied its holding in *McKillip* to a viable, nearly-full-term fetus. *Weitl*, 311 N.W.2d at 272-73. Three justices dissented from this holding, asserting that a viable fetus should be considered a "person" under section 611.20. *Id.*, 311 N.W.2d at 275-79. In *Dunn v. Rose Way, Inc.*, the Iowa court reaffirmed its ruling in *Weitl*. *Dunn*, 333 N.W.2d at 831. Again, three justices dissented from the holding. *Id.*, 333 N.W.2d at 835.

The Iowa Supreme Court has not addressed the issue directly for more than twenty-three years, since its 1983 decision in *Dunn*. In 1987, the Iowa court decided *Craig v. IMT Insurance Co.*, 407 N.W.2d 584, 588 (Iowa 1987), holding an unborn child is a "covered person" under an insurance policy. In 2003, the Iowa court decided *In re Marriage of Witten*, 672 N.W.2d 768 (Iowa 2003), holding a frozen embryo is not a "child" for purposes of Iowa's child custody laws. The *Witten* court reviewed its prior decisions regarding the rights of an unborn child, noting the decisions appeared to be contradictory. However, the court distinguished those decisions by explaining that each of them was decided on the basis of the particular statute in question, rather than on any overarching philosophical or legal distinction of an unborn fetus's rights. *See Witten*, 672 N.W.2d at 774-76.

Crittenton argues *Witten* is dispositive but this court disagrees. The *Witten* court expressly declined to base its decision on its prior precedents, instead looking to the purpose of the custody statute at issue in the case. *Id*. Further, in *Witten*, the Iowa court

---

[3] The *McKillip* court acknowledged that the federal court in Iowa had ruled otherwise in *Wendt v. Lillo*, 182 F. Supp. 56 (N.D. Iowa 1960), but the Iowa court declined to follow that authority. *McKillip*, 191 N.W.2d at 709.

6

was not faced with a request to reconsider the statutory purpose underlying the wrongful death cause of action.

Although the Iowa Supreme Court might decline to consider the issue anew, or having done so might reach the same result, this court is reluctant to render a decision based upon historical precedents more than twenty years old. *See Keener v. Convergys Corp.*, 312 F.3d 1236, 1241 (11th Cir. 2002) ("'Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court . . . to offer the state court the opportunity to interpret or change existing law.' *Mosher v. Speedstar Div. of AMCA Intern., Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995) (citation omitted)."); *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 761 (11th Cir. 2002) (same).

The plaintiffs rely primarily on *Aka v. Jefferson Hospital Association, Inc.*, 42 S.W.3d 508 (Ark. 2001), in which the Arkansas Supreme Court held the term "person" in the Arkansas wrongful death statute includes an unborn viable fetus, overruling *Chatelain v. Kelley*, 910 S.W.2d 215 (Ark. 1995). In reversing its holding in *Chatelain*, the Arkansas court largely relied on the fact that in 1999, the state legislature had changed the definition of a "person" in the state's homicide statute to include "an unborn child in utero at any stage of development." Ark. Code Ann. § 5-1-102(13)(B)(i)(a) (Michie 1999). The legislature defined "unborn child" to mean "a living fetus of twelve (12) weeks or greater gestation." Ark. Code Ann. § 5-1-102(13)(B)(i)(b) (Michie 1999). The *Aka* court found the legislature's revision to the homicide statute reflected disapproval of the *Chatelain* decision. *See Aka*, 42 S.W.3d at 516-17. The *Aka* court further noted that following submission of the appeal in the case, the Arkansas legislature had amended the state's wrongful death statute "to include viable fetus in the definition of person for

7

wrongful-death actions." *Id.*, 42 S.W.3d at 518 n.4 (discussing Ark. Code Ann. § 16-62-102(a) (Michie 2001)).[4]

The plaintiffs here argue changes to Iowa law since the *Dunn* decision reflect a similar shift in legislative sentiment in Iowa, warranting another look by the Iowa Supreme Court at its interpretation of the Iowa wrongful death statute. Iowa Code section 707.8 makes it a crime to "terminate[] a human pregnancy without the consent of the pregnant person." At the time *Dunn* was decided, section 707.8 prohibited termination of a human pregnancy without the mother's consent during the commission of a felony or felonious assault, or by force or intimidation. *See* Iowa Code § 707.8 (1977). In 1996, section 707.8 was rewritten to broaden the statute's scope. Among other things, the statute now includes criminal penalties for the unintentional termination of a human pregnancy by someone operating a motor vehicle while intoxicated, or while drag racing. Iowa Code § 707.8(4), (6); *see* Iowa Code § 707.6A(1); Iowa Code § 321.278. In addition, in 1998, the Iowa legislature passed Iowa Code section 707.8A, which prohibited partial-birth abortions and provided a civil cause of action for damages against persons who perform the procedure. The Eighth Circuit Court of Appeals held section 707.8A to be unconstitutional in 1999, *see Planned Parenthood of Greater Iowa v. Miller*, 195 F.3d 386 (8th Cir. 1999), but the plaintiffs argue passage of the law in the first place evidences Iowa's public policy that an unborn fetus is a protected person, the injury to whom may give rise to damages.

The defendants SMEF and Dr. Vernon argue these recent revisions to Iowa law indicate that the Iowa legislature expressly declined to extend the law to encompass the

---

[4]The *Aka* court also relied on another expression of "the State's public policy on this subject"; that is, the state's adoption, in 1988, of Amendment 68 to the Arkansas Constitution, declaring that "[t]he policy of Arkansas is to protect the life of every unborn child from conception to birth, to the extent permitted by the Federal Constitution." *Aka*, 42 S.W.3d at 516-18. In a footnote, the court also observed that prior to its decision in *Aka*, thirty-two jurisdictions permitted wrongful death actions on behalf of a viable fetus, while only nine jurisdictions rejected such causes of action. *Id.*, 42 S.W.3d at 515 n.2.

8

rights of an unborn fetus. In particular, they note that when the Iowa legislature enacted Iowa Code section 707.8A, prohibiting partial birth abortion, the legislature limited the civil cause of action for damages under the statute to the mother, father, and maternal grandparents of the fetus, excluding any cause of action for damages by the unborn fetus. (*See* Doc. No. 21)

The treatment of the rights of an unborn fetus by courts throughout the United States has been intricate, confusing, and often contradictory. *See, e.g.*, 62A Am. Jur. 2d, *Prenatal Injuries: Wrongful Life, Birth, or Conception*, pt. III, *Actions for Prenatal Injuries to Decedent; Wrongful Death* (2006); 4 Modern Tort Law: Liability and Litigation § 31.8, *Prenatal Torts* (2d ed. 2006). *See also* Jason M. Steffens, *The "Peculiar" Being: The Rights of an Unborn Child in Iowa*, 88 Iowa L. Rev. 217 (Oct. 2002) (discussing inconsistencies in Iowa Supreme Court's holdings regarding the status of an unborn child). A review of current case law, state law, and legal treatises leads to the conclusion that the current trend is to permit causes of action for the wrongful death of an unborn fetus in many cases.

Resolution of this state-law issue in Iowa should be left to the state. The undersigned finds the most prudent course of action would be to exercise the court's discretion and certify the question to the Iowa Supreme Court for determination. *See Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 309 (N.D. Iowa 1997) ("Whether a federal district court should certify a question of state law to the state's highest court is a matter 'committed to the discretion of the district court.'" (quoting *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881-82 (8th Cir. 1996) (citations omitted)).

Therefore, **IT IS RESPECTFULLY RECOMMENDED**, for the reasons discussion above, that unless any party files objections in accordance with 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b) within ten days from the date

of this Report and Recommendation, the motion to certify (Doc. No. 16) be granted, and the following question be certified to the Iowa Supreme Court:

> **Does an unborn fetus have a cause of action for wrongful death under Iowa Code section 611.20?**

**IT IS FURTHER RESPECTFULLY RECOMMENDED** that if the court certifies this question to the Iowa Supreme Court, the court stay further proceedings in this case, including any ruling on the defendants' motions to dismiss and for judgment on the pleadings (Doc. Nos. 12, 13 & 14), pending an answer from the Iowa Supreme Court to the certified question.

**IT IS SO ORDERED.**

**DATED** this 4th day of December, 2006.

*[signature: Paul A. Zoss]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT