# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| TONI SCADDEN and BILL STORM, <br><br> Plaintiffs, <br><br> vs. <br><br> NORTHWEST IOWA HOSPITAL CORPORATION *dba* ST. LUKE'S REGIONAL MEDICAL CENTER; *et al.*; <br><br> Defendants. | No. C06-4070-PAZ <br><br> **ORDER ON MOTION TO RECONSIDER DISMISSAL** |

On August 2, 2010, the plaintiffs filed a motion to reconsider the dismissal of the Estate of Noah Joe Storm as a party in this action. Doc. No. 120. The defendants have resisted the motion, Doc. Nos. 124 & 127, and the plaintiffs have filed a reply brief, Doc. No. 137.

This action was commenced with the filing of a Complaint on August 25, 2006. Doc. No. 1. Federal jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. The named plaintiffs were Toni Scadden and Bill Storm, both individually and as administrators of the Estate of Noah Joe Storm (the "Estate"). When the action was filed, Toni Scadden and Bill Storm were citizens of Nebraska, and all of the defendants were citizens of Iowa.

On September 4, 2004, the plaintiff Toni Scadden, who was 38 weeks pregnant, came to the obstetrical unit of St. Luke's Hospital in Sioux City, Iowa, because she had fallen at her home and hit her abdomen on a toy. She was kept at the hospital overnight, and then was discharged and sent home. She returned to the hospital on the morning of September 6, 2004, but by that time, the child had died *in utero*. The plaintiff Bill Storm

was the child's father. The child was named Noah Joe Storm, and on August 9, 2006, his parents opened an estate for him in Woodbury County, Iowa.[1]

Shortly after this action was filed, the defendants filed a motion to dismiss the Estate, arguing that there is no cause of action under Iowa law for the wrongful death of an unborn fetus. The undersigned recommended to the district court that the question of whether or not such a cause of action could be maintained under Iowa law should be certified to the Iowa Supreme Court. *See Estate of Storm v. Northwest Hosp. Corp.*, 2006 WL 3487620 (N.D. Iowa Dec. 4, 2006). United States District Court Judge Donald E. O'Brien rejected this recommendation and dismissed the Estate as a party to the case. Doc. No. 37. The plaintiffs filed an interlocutory appeal of the ruling to the Eighth Circuit Court of Appeals, but the appeal was rejected on procedural grounds. *Estate of Storm v. Northwest Iowa Hosp. Corp.*, 548 F.3d 686 (8th Cir. 2008).

The plaintiffs now ask the court to reconsider its prior ruling and reinstate the Estate as a plaintiff. In support of their motion, the plaintiffs raise a new argument – they argue that Nebraska law, rather than Iowa law, applies to the Estate's wrongful death claim, and under Nebraska law, there is no question that a fetus is permitted to maintain a wrongful death action. *See* Nebraska Code § 30-809. The defendants respond by arguing the plaintiffs waited too long to raise this argument, and in any event, Iowa law applies.

In their original Complaint, the plaintiffs asserted, *inter alia*, a wrongful death claim on behalf of the Estate of Noah Joe Storm under Iowa Code section 611.20. Doc. No. 34, ¶ 34. There was no reference to Nebraska law in the Complaint. Judge O'Brien dismissed the Estate's claim on March 7, 2007, ruling that Noah Joe Storm was not a "person" under section 611.20, and the Estate therefore could not pursue a wrongful death claim. Doc. No. 37, p. 28; *see* Doc. No. 42, p. 1. On June 8, 2010, the plaintiffs moved to amend the

---

[1] Even though the Estate was opened in Iowa, the child presumably would have lived with his parents in Nebraska, so for purposes of diversity jurisdiction, the citizenship of the Estate was Nebraska. *See* 28 U.S.C. § 1332(c)(2).

2

Complaint to add two new claims and to substitute a named defendant for a "John Doe" defendant. In their proposed Amended Complaint, the plaintiffs again asserted a wrongful death claim on behalf of the Estate under Iowa Code section 611.20. Doc. No. 104-1, ¶ 33. On June 25, 2010, the undersigned granted the motion to amend the Complaint,[2] but ordered as follows: "To the extent the plaintiffs' motion to amend seeks to renew Count I on behalf of the Estate, the motion is **denied**. The plaintiffs are directed to submit an Amended Complaint that deletes the Estate of Noah Joe Storm as a plaintiff, and does not include any claims on behalf of the Estate." Doc. No. 110, p. 3. On June 30, 2010, the plaintiffs file an Amended Complaint in compliance with this order. Doc. No. 112. The deadline for amending pleadings expired June 19, 2010. *See* Doc. No. 94.

On August 2, 2010, the plaintiffs filed their motion to reconsider the dismissal of the Estate as a party, arguing that Nebraska law, which would permit the Estate to maintain a wrongful death action, should apply. Doc. No. 120. The defendants responded by arguing that the motion is, in fact, another motion to amend the Complaint, and it should be denied as untimely. They further argue that the motion should be denied because Nebraska law does not apply. The plaintiffs replied that the motion is not a motion to amend, but a motion seeking reinstatement of a claim that was pled in the original Complaint. Doc. No. 102, p. 2.

In fact, however, in their motion to reconsider, the plaintiffs did not ask to reinstate a claim pled in the original Complaint, but specifically ask that "the Court reconsider its prior decision and reinstate the Estate of Noah Joe Storm as a Plaintiff in this matter." Doc No. 120, p. 2; *see* Doc. No. 121, p. 7. If the court were to grant the requested relief, the Complaint, as currently constituted, would not include a wrongful death claim on behalf of Noah Joe Storm, so the inclusion of the Estate as a party would be meaningless without a corresponding amendment to the Complaint. The court concludes

---

[2]On February 20, 2009, with the parties' consent, this case was reassigned to the undersigned United States Magistrate Judge for final disposition. Doc. No. 63.

that what the plaintiffs are, in fact, requesting is an order for all of the following: (1) reinstatement of the Estate as a party; (2) reinstatement of the wrongful death claim; and (3) either holding that the reinstated Iowa wrongful death claim is sufficient for purposes of Federal Rule of Civil Procedure 8(a)(2) to plead a Nebraska wrongful death claim, or permitting an amendment to the Complaint to assert a Nebraska wrongful death claim. The question is whether this requested relief would constitute an untimely amendment to the pleadings.

The viability of a wrongful death claim on behalf of Noah Joe Storm has been a central issue in this case for nearly four years. The court finds that the deadline for amending the pleadings, which expired June 19, 2010, applies. Although Federal Rule of Civil Procedure 15(a) generally supports the liberal granting of motions to amend pleadings "when justice so requires," Rule 16(b) "provides that scheduling orders limit the time for amending pleadings and that a schedule established by such an order 'shall not be modified except upon a showing of good cause.'" *Schenk v. Chavis*, 259 Fed. Appx. 905, 907 (8th Cir. 2008). The plaintiffs have given no justification for raising a new argument on this issue at the eleventh hour. Because no cause has been shown to allow the proposed amendment after the expiration of the deadline, the motion is **denied**. *See id.* (district court has broad discretion in matters of trial management); Fed. R. Civ. P. 16(b).

However, in the interests of completeness, the court will proceed to analyze the conflict-of-laws question presented by the proposed amendment. Because this is a diversity case, the court will apply the choice-of-law rules of Iowa, the forum state. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941); *accord Baedke v. John Morrell & Co.*, 748 F. Supp. 700 (N.D. Iowa 1990); *see Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991); *Jones v. Winnebago Industries, Inc.*, 460 F. Supp. 2d 953, 964 (N.D. Iowa 2006).

On choice-of-law questions, the Iowa Supreme Court has adopted the approach set out in the *Restatement (Second) of Conflicts of Laws* (the "Restatement"). *Joseph L.*

4

*Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 325-26 (Iowa 1977). In tort cases, Iowa applies the "most significant relationship test" set forth in section 145 of the Restatement. *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996) ("Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement's 'most significant relationship' methodology for choice of law issues."). Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,

> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

More specifically with regard to wrongful death actions, Section 175 of the Restatement provides:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

In effect, Section 175 creates a presumption that the law of the state where the injury occurred should be used. *In re Air Crash Near Chicago*, 644 F.2d 594, 616 (7th Cir. 1981); *Johnson v. Avco Corp.*, 2009 WL 4042747 at *2 (E.D. Mo., Nov. 20, 2009). This presumption can be rebutted only by a showing that some other state has a more significant relationship to the parties and occurrences.

The defendants argue there is no question that the injury occurred in Iowa. They cite *Blakesley v. Wolford*, 789 F.2d 236, 241 (3d Cir. 1986), for the proposition that "in a malpractice case, the place where the injury occurred is the place where the operation that injured the plaintiff took place." Doc. No. 127-1, p. 6. This principle does not necessarily apply here, however, where the negligence alleged was not from an affirmative act by the defendants in Iowa. Rather, the defendants allegedly were negligent in ***not*** hospitalizing the plaintiff, but in sending her home to Nebraska. Even though the alleged malpractice occurred in Iowa, it is not clear that the "the injury occurred" in Iowa. Comment b to § 175 states, "The place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs. Nor is it the place where the death results in

6

pecuniary loss to the beneficiary named in the applicable death statute." Because Toni Scadden was in Nebraska when she fell on the toy, and also could have been in Nebraska when the fetus died, "the injury," for purposes of section 175, may well have occurred in Nebraska. *See Natalini v. Little*, 185 S.W.3d 239, 248 (Mo. Ct. App. 2006) (where doctor in Missouri failed to treat Kansas patient properly for lung cancer, the wrongful death action of her estate was controlled by Kansas law because the force set in motion by the defendant "first took effect" in Kansas). However, the facts are not clear enough for a presumption to apply in either direction. Thus, the court must analyze the question by looking to the section 145 factors.

In the brief in support of their motion to reconsider, the plaintiffs do not cite any cases where courts have performed this analysis. *See* Doc. No. 121. Instead, they set out the factors listed in section 6(2) of the Restatement, and argue that an analysis of these factors leads to the conclusion that Nebraska law should be applied in this case. *Id.* at 5-7. They argue, "Simply put Noah was to be a resident of the state of Nebraska, as that was the domiciliary of his parents. Therefore, the laws of the state of Nebraska should control this matter because Nebraska, not Iowa, should have the right to determine who is a 'person' for the purposes of wrongful death laws." *Id.* at 6. They assert that subsections (a) and (b) of section 6(2) "weigh heavily in favor of applying Nebraska law," arguing that "Nebraska has the most interest in this matter with respect to determination of who its 'persons' are," and "Nebraska has the right to fashion laws in order to protect their (sic) citizens." *Id.* They further maintain that subsections (c), (d), and (e) also favor application of Nebraska law, arguing that case law precedent interpreting Iowa Code § 611.20 "is decades old, and is by far the minority opinion among the various state jurisdictions." *Id.* They conclude their argument with the following:

> Furthermore, from a common sense standpoint, Iowa law does not make sense – the current policy of the state of Iowa is that if a child dies one minute after death [sic], there is a cause of action for wrongful death but if a child dies one

7

> minute before birth, there is no cause of action. There is absolutely no rhyme or reason for this policy. The state of Nebraska policy is clear – if a persons [sic] negligence causes a death of a person, whether an unborn fetus or live person after birth, the person has a cause of action for wrongful death. Accordingly, factors (f) and (g) also weigh heavily in favor of applying Nebraska law.

*Id.*, at 6-7.

The parties have cited, and the court has located, no Iowa cases addressing a factual situation close to the present one. In *Judge v. Clark*, 725 N.W.2d 658 (Table), 2006 WL 3313794 (Iowa Ct. App. Nov. 16, 2006), the court considered the choice-of-law issue in a wrongful death action, but the facts are distinguishable from the present case. In *Judge*, the plaintiff, the administrator of the estate of a worker, brought a wrongful death action against a co-employee alleging gross negligence. The worker and the co-worker both were residents of Iowa. The worker was killed while cleaning a boiler in Wisconsin, allegedly because of the negligence of the co-worker. Wisconsin does not recognize co-employee gross negligence as a cause of action, but Iowa does. Applying Iowa choice-of-law principles, the court found that Iowa had the most significant relationship to the occurrence and the parties, and applied Iowa law to allow the cause of action. Wisconsin's only connection to the case was that the death and the conduct causing the death had occurred there. On the other hand, both the plaintiff and the defendant were residents of Iowa. They had worked in Wisconsin for only a couple of days on a temporary assignment. The decedent's estate was opened in Iowa, his heirs all were in Iowa, and their employers were in Iowa. On these facts, the court found that Iowa law should apply. However, *Judge* is not controlling here, where the conduct causing the death occurred in Iowa, and all of the defendants were citizens of Iowa.

The defendants cite a number of cases in support of their argument that Iowa law should control. *See* Doc. No. 127-1 at 8-11. None of the cases is directly on point in the present inquiry. For example, in *Cooney v. Booth*, 210 Fed. Appx. 213 (3d Cir. 2007),

8

the plaintiff's decedent, who was domiciled in New Jersey, died following knee replacement surgery in Pennsylvania. His surgery and treatment actually took place in Pennsylvania, and the court accordingly found that Pennsylvania had the most "substantial interest in deterring the misconduct alleged to have occurred." *Id*. at 218. The case is not particularly helpful in the present analysis. As noted above, here, it was the defendant's failure to treat the plaintiff that allegedly led to the death of the fetus. The *Cooney* court did, however, make the relevant observation that "while the injured party's domicile is certainly a strong factor to consider, it must be weighed accordingly with the other significant interests of each state." *Id*. at 217.

In *Jeffress v. Reddy*, 77 Fed. Appx. 627 (4th Cir. 2003), the court conducted no choice-of-law inquiry, discussing the parties' citizenship only in the context of whether the district court had subject matter jurisdiction. The case is irrelevant to the present inquiry.

In *Castelli v. Steele*, 700 F. Supp. 449 (S.D. Ind. 1988), the court examined Indiana's departure from the traditional *lex loci delicti* rule, and applied the modified choice-of-law rule announced by the court in *Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987). The three-step process adopted by the Indiana court is not applicable here.

In *Warriner v. Stanton*, 475 F.3d 497 (3d Cir. 2007), the court analyzed the choice-of-law issue under section 145 of the Restatement, but under a different standard than that applied by the Iowa courts. In *Warriner*, the injured party was domiciled in New Jersey, but received all of his treatment in Delaware, where "all of the events and conduct giving rise to the litigation occurred." *Id*. at 499. Applying the "governmental interest test" drawn from section 145 of the Restatement, the court found the most important of those factors to be "the competing interests of the states." *Id*. at 500. The court observed that "[t]he protection of the parties' justified expectations, a factor of extreme importance in the field of contracts, ordinarily plays little or no part in a choice-of-law question in the field of torts.'" *Id*. at 500-01 (quoting *Fu v. Fu*, 160 N.J. 108, 733 A.2d 1133, 1217

9

(1999)). Analyzing the factors set forth in section 145 of the Restatement, the court found that Delaware law applied, noting that all of the contacts between the injured party and the defendants occurred in Delaware, and "both the allegedly tortious conduct and injury occurred in Delaware." *Id.* at 503. *See also Jett v. Coletta*, 2003 WL 22171862 (D.N.J. Sept. 22, 2003) (applying New Jersey's "governmental interest" test; finding New Jersey law applied where Idaho resident was injured while visiting her grandmother in New Jersey, and all of her medical treatment and the alleged negligence occurred in New Jersey); *Amoroso v. Burdette Tomlin Mem. Hosp.*, 901 F. Supp. 900 (D.N.J. 1995) (applying New Jersey's "governmental interest" test; finding New Jersey law applied where Pennsylvania resident was fatally stabbed while attending a party in New Jersey). Iowa does not apply the "governmental interest" test, but instead applies the "most significant relation test" of section 145 of the Restatement. *See Veasley*, 553 N.W.2d at 897.

The case of *Grover v. Isom*, 53 P.3d 821 (Idaho 2002), also cited by the defendants, is somewhat instructive because Idaho, like Iowa, applies the "most significant relation" test to choice-of-law issues. In *Grover*, all of the parties lived in Idaho, but the defendant oral surgeon's business was located across the border in Oregon. The court applied Idaho choice-of-law rules, noting, "Idaho applies the 'most significant relation test' as set forth in the Restatement (Second) of Conflict of Laws § 145 in determining the applicable law." *Id.* at 823-24. In applying that test, the Idaho courts deem the most important factor to be "'the place where the injury occurred.'" *Id.* at 824 (quoting *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (1995) (citation omitted). The alleged negligence occurred during oral surgery conducted in the defendant's business office, and the

appellate court found that "the injury occurred in Ontario, Oregon."[3] *Id.* at 824. The *Grover* court then proceeded to evaluate these factors in light of the policy concerns set forth in section 6 of the Restatement, as required by section 145. The court held as follows:

> These policies [of section 6 of the Restatement] support the application of Oregon law. The needs of the interstate and international systems are not likely implicated in this case. In considering relevant policies of other states it is clear that Oregon has an interest in making certain that oral surgeons practicing in Oregon are subject to Oregon laws and the Oregon standard of care. The defendants would justifiably expect to be governed by Oregon law, since they were licensed in Oregon and in this case conducted their business in Oregon. "The basic policy of negligence law is to allow a person to recover from injury proximately caused by another's violation of a duty of reasonable care." *DeMeyer [v. Maxwell]*, 103 Idaho [327], 330, 647 P.2d [783], 786 [(Idaho Ct. App. 1982)]. As a general rule, a victim should recover under the system in place where the injury occurred. Predictability and ease in determining and applying law are also better served by applying Oregon law, because it is a simple policy that the place of the injury should generally govern the choice of law.

*Grover*, 53 P.3d at 824. The court further noted that the plaintiff's presence in Oregon was not fortuitous, in that she purposefully had gone to Oregon for the oral surgery. The court observed that the defendants were practicing in Oregon, and they "had every expectation that Oregon law would govern their business in Oregon." *Id.* Noting that the only factor justifying application of Idaho law was the fact that the parties were Idaho residents, the court held the district court had ruled correctly in finding Oregon substantive law applied to the case. *Id.* at 825.

---

[3]Notably, at trial, the jury found that the plaintiff's condition actually arose before she visited the defendant oral surgeon's office. *See Grover*, 53 P.3d at 823. Had the appellate court made such a finding, the case would have been similar to the present case, in that it would have been difficult or impossible to determine the location where the "injury" occurred.

Although the *Grover* court's analysis is instructive, *Grover* also is distinguishable on its facts. Once again, the court's analysis turned on where "the injury occurred." Here, the record contains insufficient facts to resolve that question. The "injury" could have been the defendants' actions in sending the plaintiff home, or it could have been Noah Storm's death, which itself could have occurred in either Iowa or Nebraska. The court finds that in this case, "the place where the injury occurred" is a factor that does not weigh in favor of the law of either state. Therefore, the court will look to the other Restatement factors to determine the choice-of-law issue.

The first factor, found in subsection 6(a) of the Restatement - "the needs of the interstate and international systems" - has little, if any, relevance to this case. As Judge Mark W. Bennett observed in *Jones v. Winnebago Industries, Inc.*, 460 F. Supp. 2d 953 (N.D. Iowa 2006), this factor is concerned more "with *what choice-of-law rules* further the needs of the interstate and international systems, . . . than with *what forum's substantive law* furthers the needs of the interstate and international systems." *Jones*, 460 F. Supp. 2d at 972-73 (emphasis in original) (citing Restatement § 6, comment *d*). Judge Bennett noted the Iowa Supreme Court had observed in *Veasley* that "'[r]espect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a "substantive connection" with the issue.'" *Jones*, 460 F. Supp. 2d at 973 (quoting *Veasley*, 553 N.W.2d at 899, in turn quoting *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 417 (1973)). Iowa clearly has a "substantive connection" with the issue at hand, in that the medical practitioners who treated and released the plaintiff were licensed under Iowa law and were practicing in the state.

The next two factors, found in subsections (b) and (c) of section 6 - "the relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue" - carry more weight under these circumstances. *See* Restatement § 145, cmt. *b* (indicating "the state with the dominant interest in the determination of the particular issue" is of paramount interest in

the section 6 analysis). The plaintiff argues Nebraska has a controlling interest in determining who is a "person" for purposes of wrongful death law. Doc. No. 121, p. 6. They further argue that the "Iowa law does not make sense -- the current policy of the state of Iowa is that if a child dies one minute after [birth], there is a cause of action for wrongful death but if a child dies one minute before birth, there is no cause of action." *Id*. While it may be true that Nebraska has an interest in the issues in this case, Iowa also has an interest in ensuring that medical service providers who practice in Iowa are subject to Iowa laws and the Iowa standard of card. *Cf. Grover*, 53 P.3d at 824 (making a similar analysis). Further, Iowa has an "interest in providing a forum for redress of injuries caused by its citizens." *Jones*, 460 F. Supp. 2d at 974. The court finds these two factors weigh, albeit only slightly, in favor of the application of Iowa law.

The next factor to be considered, found in subsection 6(g) - "ease in the determination and application of the law to be applied" -- has little importance here. To paraphrase the *Veasley* court's observation, either the defendants here may be held liable or they may not. "No esoteric or complex substantive laws are involved." *Veasley*, 553 N.W.2d at 898; *accord Jones*, 460 F. Supp. 2d at 974. Similarly, the "basic policies underlying the particular field of law," the factor found in subsection 6(e), bears little relevance here.

Although ordinarily less important in tort cases, *see Warriner*, 475 F.3d at 500-01, and *Veasley*, 553 N.W.2d at 898, the protection of the parties' justified expectations, found in subsection 6(d), ends up carrying the day in this case when considered together with the relevant and relative policies of Iowa and Nebraska. The plaintiff voluntarily came to Iowa to seek medical treatment. All of the practitioners who treated her and made decisions regarding her care were licensed in Iowa, and took actions relating to her in Iowa. Because they were licensed in Iowa, the defendants justifiably could expect to be governed by Iowa law. The plaintiffs also reasonably could have expected to be governed

by Iowa law when they entered Iowa to seek medical care. In fact, for the first four years of this litigation, that is what they believed.

As Judge Bennett held in *Jones*, "[u]pon consideration of the § 145(2) 'contacts' and the § 6 'factors' that make up the 'most significant relationship' test for conflict-of-laws determinations under Iowa law, the court concludes that Iowa has the dominant interest in the issues presented and that application of Iowa law is in keeping with the pertinent factors." *Jones*, 460 F. Supp. at 975. An identical result is appropriate here. After considering all of the relevant factors, the court finds that Iowa has the "most significant relationship" and a dominant interest in the issues in this case. Therefore, Iowa law controls. Application of Iowa law also will further the "certainty, predictability, and uniformity of result" - the factor found in subsection 6(f) - by ensuring that cases involving Iowa medical practitioners are decided under Iowa law. Accordingly, the plaintiff's motion to reinstate the wrongful death claim is denied.

**IT IS SO ORDERED.**

**DATED** this 22nd day of September, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT